Good morning, Your Honors, and may it please the Court, Patrick Carey, Pro Bono Counsel for Appellant Mr. Timothy Howard. I'd like to reserve one minute for rebuttal, please. All right. Your Honors, the Court below committed a number of reversible errors when it entered summary judgment in favor of the officers in this action. Summary judgment requires an absence of material fact. Here, however, Howard, who was proceeding pro se at the time, brought forth affidavits, admissions, interrogatory responses, and documents that show a genuine issue of material fact existed as to whether the officers retaliated against him in violation of his First Amendment rights. So, Counselor, I appreciate that you probably want to get to this argument because that's the merits of the argument, but what's this Court to do with this letter that your client put together? Well, Your Honor, I've never seen such a letter. The State did file a motion to dismiss based on a letter that Mr. Howard sent. The motion actually could be styled a motion to dismiss or an alternative in a request for admonishment. Well, it could be, but how do I admonish your client? Well, I think as the motion points out in the conclusion that an admonishment or a warning that this type of behavior is not accepted. Well, it doesn't seem to me there's any way to warn this guy or admonish him. He has nothing to lose. You're not going to give him any financial sanction. You're here representing him, and I'm not going to give you any sanction, which I think you're probably happy about. But I mean, the bottom line is anybody who says what he said, he's intending to kill people and do all this kind of stuff in the middle of this. I read the State's brief or I read the brief, the opposition brief. I looked all over for what rules I might have to deal with this. Frankly, it seems to me if anybody starts giving those kind of threats, we ought to get rid of the appeal. He has no right to be here. Your Honor, I do think that you do have other, there's other tools available. What other tools? There are less severe sanctions, such as an admonishment or a warning. What admonishment? What's that going to do? Well, I would hope that Mr. I mean, if I take this appeal, and supposing you make a great argument, and I determine that your argument is worthwhile, and I take it and I do what you suggest, then it will seem to him like, well, that's all you got to do is threaten people, and then I get what I want. Well, I would hope that Mr. Howard would understand that what the You would hope, but I don't have any hope. Why would I? When he says, and that's the thing, I'm intending to kill one or more of the employees, and I'm intending, it's a threat made against not only them, but the prison staff, and I guess I'm, I mean, I saw the apology really apologizes at all, so my worry is, under the inherent power of this court, I don't know why we wouldn't just dismiss this appeal and get on with life. Well, I think a few points on that. I think Howard does have a meritorious First Amendment retaliation claim. It doesn't matter how meritorious his claim is. It's the procedure by which he uses one's getting here. Well, I would also point out that I think the letter needs to be read in its entirety and in its context. Well, I did read the letter in entirety, and I pointed out the lines that were most offensive to me. I think you'd have a stronger argument if we thought this fellow's blowing off steam. I understand when you're in jail as long as he is and gone through those experiences, he gets upset. That doesn't bother me too much, but this death threat doesn't seem to me to be blowing off steam. He's already tried to kill a guard by making knives himself, faking a strangulation, getting a woman in there, and said he would have killed her except he liked her. This doesn't appear to me to be just blowing off steam. I can understand the frustration of anybody in prison, but if it would have been just a letter and he'd had no prior experience with attacks on our jail people, I could see your point. But don't we have a different case here when his track record is one that says he really intends to carry this out, and if you don't, if it doesn't come out the way he wants to come out, he's going to take action? I think he did take back those statements in the apology letter that was submitted. And I think the assault on, I believe you're referring to a different assault, and I think, I don't think we can take that as character evidence that he's obviously going to follow through on such threats here. Well, I was a little bit uneasy about what he said. He said he would claim he does not desire to harm anyone, but then the next language is mighty surprising to me. He was revealing that it's situations like this that creates riots and violence because these people escape liability. That doesn't sound like an apology at all. I don't know that, I think what Mr. Howard, what he says he's trying to express in the first letter that he sent, he said he was trying to express why prisoners end up resorting to violence in prison. Now this was a prisoner who was attempting to avail himself of the courts and had been told to stop utilizing violence and to start availing himself of the grievance process and the courts. He tried doing that. He was validated in retaliation as a result, and he spent what he believes he'd be able to show on remand, that he spent an additional three years in the shoe at Pelican Bay as a result of the officer's actions. So I think what happened was, is you have somebody that's, and then his case gets dismissed, it's summary judgment, when he thinks he has a very strong case, and I think he's right. He brought forth a lot of evidence to show that these officers were acting out of retaliatory animus. And so I think he wrote this letter. He was pro se at the time. If I was his counsel then, it obviously wouldn't have been sent, and I wish it wasn't sent. But it was sent, and the state does ask for an admonishment in their motion to dismiss. Well, they say an admonishment, but I was trying to think. That's why I took this up first. What is it that I can do in this situation when a guy says, either get rid of the appeal or affirm me on appeal, or I'm going to kill somebody, which would be an admonishment? Because if in fact I take up the appeal, and you make a good argument, and I swallow it, I have done what he's suggesting. I have given him what he wants so that the threat does not happen. And if in fact I go the other way, then I don't know where I'm going. And then I look for what sanctions there are. The monetary sanctions, there are none that I can give. In fact, as I already pointed out, we already appointed you for him. There's no way to give him a monetary sanction, and a mere admonishment on this is nothing. Especially if in fact I go with you in your argument. It's as if I have honored his threat. I don't think Mr. Howard would understand that a reversal here, and I have met with Mr. Howard, and I don't think he would understand that a reversal here was a result of his threat. I think he understands that he's . . . Well, I guess I'm having a tough time understanding that, because Judge Wallace is absolutely correct about his former actions. He does have . . . there are a number of former actions in the record, but I don't think that those actions show that he's serious about acting here. I think that's character evidence that doesn't show that that's what he's going to do here. Just real quick, because I'm coming up on a minute left here. As far as the admonishment goes, this is all he has left, is access to the courts. He has the grievances in the prison, and access to the courts. That's all he has left. And I think admonishment would be taken very seriously, because if he doesn't have access to the courts, he has no recourse left, and absolutely nothing he can do. Well, that's why, it seems to me, dismissing this appeal, absolute says to him, get your act together, or you're done. Well, I think in the . . . I think . . . well, I have a minute left, Your Honor. I'd like to reserve that for rebuttal, unless you'd like a response. Okay. I'll tell you what. Why don't you give me two minutes of what you want to say on the summary judgment, so he'll have something to respond to. I appreciate that, Your Honor. I mean, I know I took you off course, and frankly, I thank you for being his pro bono counsel. You're a good person to do that, and you've done a good job, and I appreciate that effort. And I wouldn't want you to go away, and me thinking you didn't, or me having you think, I didn't think you were a good counsel for doing what you've done. But I had to leave with you my stern, if you will, rebuke, and to my thinking, consternation about what I do in a situation where somebody says, if I don't get my way, I'm going to kill everybody, and having had that opportunity before, has taken advantage of it. But meanwhile, to the merits. Thank you, Your Honor. So first, the district court misapplied the applicable law in holding that the officers had not taken an adverse action against Howard. Both the officers' threat to validate Howard and the ensuing validation were adverse actions. And I want to be very clear on this point up front about the scope of the evidence that was submitted in the validation procedure. Page 215 of the record makes this very clear. There were four pieces of evidence submitted in the validation procedure, and it was those four pieces of evidence that were used to validate Howard. Now, two of those pieces of evidence came from Officer Harris, and the third piece of evidence came from Officer Martin. Howard would not have been validated on the sole remaining piece of evidence that was submitted by another officer. So the ensuing validation was actually an adverse action, because it was the natural and proximate result of them submitting this memoranda. Additionally, the threat under this court's precedent is another adverse action. Now, the court below also overlooked the, I'm sorry, move forward. There's also the dispute of fact as to whether the officers were acting out of retaliatory animus. There's direct evidence in the record of the threats in the form of an affidavit from Mr. Howard, and in the form of an affidavit from another prisoner. Now, additionally, there's circumstantial evidence. Harris's two memoranda describe property allegedly belonging to Howard, but the officers have admitted in discovery that they cannot produce the proper documentation showing that Howard had property at the prison for them to search. Now, Harris now claims that he searched someone else's property and that this was just a mistake, but that's not an inference that can be drawn in Harris's favor at summary judgment. The officers have also been caught trying to change the date that this interview took place, and I point out in the briefs, I think this is evidence that they were trying to distance themselves from this March 10th interview, probably because that's the interview where these threats were made, and where another prisoner overheard these threats being made. And so they wanted to distance themselves from this March 10th interview, and they used a later date. In discovery, Howard was able to point out that he was out of court on March, out at court on March 19th, when they originally claimed this interview took place. When he pointed that out, the officers changed what they had already alleged in their answer, that this interview took place on March 19th, and said, well, we were mistaken, it must have taken place on the 18th. Howard asked them to point to where in the prison log books that showed them signing in to the prison to interview him on that date. And they admitted that the log books do not show them signing in. Now, this is important because additionally, on top of this, what we had below in the prison, Howard is able to partake in an informal investigation process on his own in regards to the validation. And he submitted a number of questions, were basically informal interrogatories to these officers. And they told the investigating officer in that case, or in that situation, that the log books show them signing into the prison on that day. Now, under oath, or in their admissions and in the interrogatories, they say, the log books do not show us signing in. All this taken together is circumstantial evidence that the officers were acting out of a different reason or were up to something in retaliating against Mr. Howard. So, in short, creating a genuine issue of fact, precluding summary judgment. Absolutely, Your Honor. Thank you. Thank you. Good morning, Your Honors. And may it please the court, Deputy Attorney General Kevin Voth for defendants. Your Honors, this court should dismiss Howard's appeal as a sanction for using death threats as a litigation tactic when he wrote to defense counsel, informing her that, quote, if this case is not reversed as required or settled by CDCR as it should, I do intend on killing one or more CDCR employees. Now, the court should not countenance this type of egregious bad faith conduct and should grant defendants motion to dismiss. However, if the court chooses to reach the merits on Howard's retaliation claims, it should nevertheless affirm. Terminating sanctions here are warranted. Are there less drastic sanctions the state would propose than a dismissal? Because your motion didn't say dismiss, period. No, Your Honor. Although the motion did in the conclusion say that in the absence of any other sanction that would be imposed by this court, at the very least, he should be told and admonished that this is unacceptable behavior. But I would submit to the court that there are no lesser sanctions available to this court to penalize Mr. Howard and deter future misconduct. Let me just ask you then, we're talking about deterring Mr. Howard. If it turned out to be true that the officers did retaliate and did threaten him and did provide false information so that he got validated. How, if we dismiss this, do we address their actions? This court, if the court were to dismiss, it would be unable to reach the merits of that case. And it would be unable to, Howard would not be able to achieve a remedy if that were true. But Howard's conduct in this case is so egregious and is directly related to his, he's expressly made these death threats for the purpose of influencing the outcome of this case. Is that, I mean, it's very hard to measure or balance bad and bad. But what about correction officers who violate the constitutional rights of prisoners who are quite helpless in that situation? Is it more important to admonish or punish this prisoner who was using the court system to get what he wanted? Or is it more important to let the officers know that they were using the court system to get what they wanted? And there may be some proof to corroborate what he says. Are you saying that it's more important to admonish or punish this prisoner who was using the court system to get what he wanted? Or is it more important to let the officers know that had they done what he said, or if it turns out they did what he said, that they can't get away with it? Well, Your Honor, the judicial process is available to litigants so that they can vindicate their rights and deter misconduct when it is proven. However, here, Mr. Howard, his conduct is so egregious and beyond the pale, it undermines the integrity of the judicial process itself. If he can make death threats as part of an express effort to try to influence the outcome of this appeal, here, trying to either coerce a settlement or otherwise overturn the judgment, then he has engaged in conduct that is not only detrimental to the parties and the litigant, but it's an affront to this court and the judicial process as well. And so- We all believe in repentance because we all make mistakes. Here, he tried to take it back and say, I really didn't mean it. What are we to, we don't have him in front of us. We can't assess whether or not he's serious or whether he's just trying to make sure he gets his case told. But at least he's made an effort to say, I was wrong. Are we just to overlook that? And if not, how do we weigh something like this? Well, Your Honor, I would disagree that he has shown that or accepted or expressed any sort of contrition in this matter. And we have his own words that demonstrate that fact. In his, after defendants moved to dismiss this case, he filed an opposition that did not retract his threat or back down or walk back any of his comments about inflicting violence as a means to affect the outcome of this case. He said that he was justifying his statements because of prison conditions. He went on in his apology, his so-called apology letter, to say that in fact his letter was evidence that he had showed great restraint by not effectuating his threats and that he would wait until the case ran its course. Which is simply a reiteration of the fact that he means what he says. As you pointed out, Judge Wallace, he's engaged in this type of conduct before. He's admitted on the record that he's used threats of violence when prison officials have not responded to his grievances, to his satisfaction. He lured an officer into his cell and then attempted to kill that person. And so it's not to show that he's certainly going to do this again, but it demonstrates that it's a type of misconduct that the court has to take very seriously. And as Mr. Howard's own words demonstrate, there's no dispute that this conduct is the epitome of bad faith. I mean, he expressly made it for the purpose of trying to influence the outcome of the appeal. And there's no dispute that he sent the letter, what the words in the letter say. And this is the type of behavior that the court has to sanction. And Judge Smith, to your point, an admonishment or a lesser sanction is simply not available in this case. His apology letter that says I showed great restraint by sending a threatening letter only shows that he would not be deterred by an admonishment or mere warning. That he in fact has no qualms about making these type of threats as a litigation tactic, a tool to affect the outcome of this case. And so- Go back to the merits, as Judge Wallace aptly said. To the merits. Your Honor, with respect to the merits, the one element that was not addressed is whether the allegedly retaliatory acts served some legitimate correctional purpose. In here, we submit that Defendant Martin and Defendant Harris's validation memos served a legitimate correctional purpose. Regardless of the statements that were made, Defendant Martin's memo documented Howard's, the attack on Officer Botello on August 21st, and its connection with George Jackson, the founder of the Black Guerrilla Family Prison Gang. And those facts that are contained in the memorandum, Howard has conceded, he admitted that they're essentially correct. That he chose August 21st to commit his attack in connection with George Jackson. He said it was because of the effects of George Jackson and that it was the principle that he could not compromise his principles. He needed to kill an officer and be prepared to die himself. So the memo, the, Defendant Martin's memorandum served a legitimate correctional purpose of identifying and combating prison gangs. And with respect to Defendant Harris's memorandum, the property, he, it's undisputed that Defendant Harris searched, it was a, the memorandum documented the search of Howard's property, which occurred. No, no, no, it did not document the search of the appellant's property. It documented the search of somebody's property whose last name is Howard, whose name was on the box, or whatever it was, whose prison number was on the box, which was different from the appellant here. And yet, everything that was in that box was ascribed to the appellant. Your Honor, that's true. He, however, never, in his testimony, he did not deny to Defendant Harris that the property was not his. He made this comment saying that, read the name on the folder. And Defendant Harris testified that, to his knowledge, that property belonged to Mr. Howard. Even though it had a different first name, excuse me, and number. And number, I was going to say, not only name, number. That, that is what Mr. Howard's testimony was. However, I don't believe that that's sufficient to show that Defendant Harris actually knew about the property. Just a minute. All we got to have here, isn't it, is enough evidence to create a genuine dispute of material fact. Seemed to me, based on what, what we have here, that there's enough evidence to give a genuine dispute of fact. I mean, in the end, with everybody in front of everybody, and everybody hearing both sides, one can make a decision. But based on what's in this record, I'm worried that, well, not worried. I'm saying I don't know how the district court could have come out differently than that there is a genuine issue of fact. Your Honor, I see that I'm out of time. Well, you can keep going, because I asked the question. It's, that is a, it's a, that is a difficult factual circumstance. I would say that only that his, based on Defendant Harris' testimony, that he received that property from the property officer who said that it was, belonged to Howard's. And that Howard's testimony wasn't enough to show that he actually knew that it was not his. But really, we're going to have to have some cross-exam and some testimony to get to the bottom line, aren't we? I mean, we can't just say this is automatic, or can we? I mean, I don't think the state would argue that. I, I would agree with that, Your Honor, yes. And then, if we get a furlong's memorandum, I guess I don't understand why the district court shouldn't have considered the memorandum. It was attached as an exhibit to Howard's complaint. I mean, if I were going to be in the district court, and we had this memorandum attached to the complaint, I'm having a tough time understanding why that wouldn't have been considered. Well, I think with respect to Defendant Furlong, the, the, the reason that the district court properly dismissed that claim is because Mr. Howard's complaint did not adequately allege retaliatory animus on the part of Defendant Furlong. What he alleged was that there was a conspiracy between him and Defendant Harris and Martin in order to validate him. And that doesn't meet the pleading requirement for intent under the Supreme Court's Iqbal and Twombly standards. And in, it's very similar to the, the Iqbal allegation, where the, the. But didn't Howard allege that Furlong's memorandum was false? He did allege that, but he did not provide any sort of factual data to support that assertion. Well, doesn't he also assert that even though he was accused of speaking to Swahili, and I say that, I was reading because I don't know how to say that name, the charge was dismissed and was never entered into the official record? He does make that allegation, Your Honor. However, that goes more to the merits of the validation and whether the validation procedure itself was correct. But that, again, that makes it another summary judgment problem. I think for, in that case, Your Honor, defendant, with respect to Defendant Furlong, it doesn't go to his intent, it goes to the merits of the validation determination. Well, if the matter that he relied on had been dismissed, and he still put it in as a basis, that might go to intent, wouldn't it? That's true, Your Honor, if, if that were, if that were the case. However, here, what, what Howard alleged is that his previous disciplinary infraction should not have generated the, the memorandum that it did. All that defendant Furlong put in the memo, which he attached to, which Howard attached to his complaint, is that he found the chrono, the memorandum in his central file that related this information. Thank you. Thank you. Thank you for your argument. We'll give you a minute. Since I took you over, I tried to apologize and give you two minutes, now I'll give you another minute. I don't want you to think I'm not fair, especially since you're a good guy and doing this for free. Go ahead. Thank you, Your Honor. I'll, I'll be quick then. As to the argument on whether the officers were acting out of a legitimate, or to further a legitimate, penological goal, Bruce versus Yilst is clear that the officers cannot escape liability by arguing that the prisoner arguably ended up where he belonged. And I think that's what we have here. There's a dispute of fact on why the officers were acting. I, I believe the record shows it was out of retaliatory animus, and a, a rational juror could certainly find that. Returning to the motion to dismiss very quickly. Generally, when a district court exercises this power, and we did not find any examples of, of an appellate court exercising this, there's a up to six factor test that a district court will look at in deciding whether to act, to, to act to act on the motion to dismiss under this inherent power. Now one of those factors is whether there's a less severe sanction available. So I would just ask the court that it, it think about that if it's going to, if it feels like it must act on this motion. Now at base what the motion to dismiss does ask you to do is to excuse the actions of the officers and to dismiss Howard's meritorious civil rights claim. And I, I don't think that's the appropriate remedy in this instance, your honors. Thank you. Thank you again for taking this on. Appreciate it. All right. Case 1515820 is
judges: Wallace, N.R. Smith, Batts